Per Curiam.

At common law the court cannot interfere after the juror has been sworn, and we think that our statute did not intend to make any alteration as to the time of inquiring into the juror’s impartiality. The objection to him must be made, as well by the Commonwealth as by the prisoner, before the juror is sworn ; or at least before the jury are einpannelled.*
The prisoner’s counsel referred to St. 1807, c. 18, which requires county-attorneys to act in behalf of the Commonwealth, “ provided, that the attorney-general, when present, and, in his absence, the solicitor-general, if present, shall, in any court, have the direction and control of prosecutions and suits in behalf of the Commonwealth.” The second section provides “ that no attorney-general, solicitor-general or county-attorney shall receive any fee or reward from or in behalf of any prosecutor, for services in any prosecution, to which it shall be his official duty to attend.”
Dexter and Gardiner objected, that as both the attorney-general and the solicitor-general were present, and neither of them disabled to conduct the prosecution, Mr. Webster ought *490 not to be permitted to act in behalf of the Commonwealth. They had understood that he was to receive a compensation for his services from a private prosecutor, and they questioned the right of a private individual to retain counsel to aid the law officers of the government in effecting a conviction for a crime punishable with death.
Nov. 10 th.
•Morton (Attorney-General) remarked that it was not a novel practice for the prosecuting officers to call in the aid of other counsel.
Davis (Solicitor-General) said the counsel for the government would be greatly embarrassed, if Mr. Webster were not permitted to act in the case, ás the preparation for the trial had been made under the expectation of his assistance.
Webster stated that he appeared solely at the request of the attorney-general, and without any pecuniary inducement.
The next day the opinion of the Court on this question was delivered by
Putnam J.
The Court have considered the application of the attorney-general for the admission of Mr. Webster to assist him in the management of this cause.
The counsel in behalf of the prisoner object, and contend that the statute of 1807, c. 18, (revived by St. 1811, c. 10,) respecting the offices and duties of the attorney-general, solicitor-general and county-attorney, makes it their duly exclusively to conduct the prosecutions on the part of the Commonwealth.
We have examined that statute and are of opinion that it was not intended to prohibit the appointment of the counsellors of this Court in aid of the law officers, whenever the circumstances of the case should require the Court, in the exercise of a sound discretion, to make such appointments. It is one of the incidental powers of the Court, and has heretofore been exercised in cases within out* own recollection.
In cases where civil rights are in controversy and the form of proceeding is by indictment or information, the Court do not perceive any objection against permitting the party in interest to employ counsel in aid of the law officers. The same reasons would not apply to cases involving public considerations only. In such cases the statute supposes that the prosecution *491 will be conducted by the law officers, for their salaries, and without any other compensation whatever.
In the present case Mr. Webster avows that he is induced to aid the attorney-general merely at his request, and without any other consideration ; so that this case presents the question, whether a counsellor may, at the request of the attorney-general, be admitted to aid him in the prosecution, without any pecuniary consideration being paid to him, or any other consideration which may be supposed to influence him, excepting a disinterested regard for the public good. And we all think that under these circumstances the application should be granted.
It is to be recollected, that at the trial of John Francis Knapp, Mr. Webster was, at the- request of the law officers, appointed to aid them, and that there was no objection then made by the prisoner or his counsel. And although that appointment strictly was for the then pending trial, yet if the other trials had followed immediately, the counsel for the government would have had reason to suppose that they were to receive his assistance in those trials, unless good objections should have been made. It is said by the law officers, that, the preparations for this trial have been made under a similar expectation on their part, and no objection was made to this measure until the jury were empannelled.
It is to be understood that the solicitor-general concurs in this application on the part of the attorney-general, and that two gentlemen only are to address the jury in the case, in behalf of the Commonwealth.* It is further to be understood, that the “ direction and control of the prosecution is to be with the attorney-general ” ; who acts under oath and upon his official responsibility.
We give no opinion upon any application of this nature under any other circumstances than such as are found in the case now before us.
The counsel for the prisoner said they should contest the fact, that J. Francis Knapp was a principal in the alleged murder.
*492 The attorney-general contended that the record of his conviction, was prima facie evidence that he was a principal, but he admitted that the prisoner might show that the offence committed did not amount to a felony in the principal, or not that species of felony with which he was charged, or that he was manifestly innocent. Hawk. P. C. bk. 2, c. 29, § 47, Leach’s note (4) ; MDaniel’s case, Foster, 121, and 10 State Trials, 417 ; Foster, 363, 365, 366 ; 1 Russell, 55, 56 ; Smith's case, 1 Leach, 323, case 136.
Dexter and Gardiner. So far as it is necessary to show the fact of a conviction of the person charged as principal, the record is evidence and conclusive evidence ; but no further. As against the accessory, it is no proof of the guilt of the principal. It is res inter alios acta, and does not cast the burden of proof upon the accessory. If the principal and accessory had been tried at the same time, the accessory might have availed himself of all matters of fact and of law to show that the principal was not guilty. This prisoner has a right to ask the jury to consider, on the whole evidence, whether the former jury came to a right conclusion. In addition to the authorities before cited, they referred to 1 Chit. Cr. L. 577, [Am. edit. 470 ;] 1 Stark. Ev. 224 ; Arc lib. Crim. PI. 398, 399 ;; 1 Stark. Crim. PI. (2d edit.) 309.
The prisoner’s counsel now offered evidence in regard to the place at which the principal, as was contended by the government upon his trial, was stationed during the perpetration of the murder, their object being to show that in that situation it was impossible for him to aid and abet the person who was actually striking the blow.
Webster. It is a question for the discretion of the Court, how far evidence respecting the principal is to be introduced. We admit it is difficult to fix the limitation. We apprehend „ that the whole question of his guilt is not open, as though there had been no trial. The conviction is prinui facie evidence that he was present, aiding and abetting, and it is necessary to prove incontestably some new fact that is incompatible with his guilt. If the conviction is to go for nothing and the former question is to be retried, the consequence must be, that, as the confessions of the principal are not evidence against the acces *493 sory, in all cases where the guilt of the principal cannot be proved without the aid of his confessions, the accessory must be acquitted.
Putnam J.
said the Court were aware of the difficulty of the question, and that they were unable to apply any definite limitation to the admission of the evidence. The verdict is to be taken as prima facie evidence of the guilt of J. Francis Knapp. It may be rebutted by showing that there was no murder, or that Francis was not in a situation where he could take a part as a. principal. We cannot stop the evidence offered, in limine. The prisoner has the burden of proof. He must show the jury that Francis ought not to have been convicted. He is not to make the propriety of the conviction questionable merely ; he must prove it to have been clearly wrong.[1]
Morton (Attorney-General) stated, that after the arrest of the two Knapps and the two Crowninshields named in the indictment, he gave a written authority to Rev. Henry Colman to receive a confession from any one of them except Richard Crowninshield, pledging the faith of the government that the one who should become State’s evidence should be protected ; that upon such promise the prisoner at the bar made a free and full disclosure, and promised to testify against his accomplices, but that in the trial of J. Francis Knapp he refused to testify. The attorney-general now proposed to give the confession in evidence, and on the point of its admissibility, he cited 4 Bl. Comm. 332, and Christian’s note ; Rex v. Rudd, Cowp. 331 ; 2 Stark. Ev. 19, 21, 23, note.
The writing obtained from the attorney-general stated that the prisoner’s “being a witness will be a pledge of the government that he will never be prosecuted for this offence.”
Henry Colman sworn. On the morning of May 28th, the day next after I heard of the prisoner’s arrest, I went to the jail to visit him. I told him I was distressed to see him there, and if I could render him any service that was proper for me to render, he might command it. He asked me if I thought they *494 could prove it, (alluding to the charge against him.) I told him I did not know any thing about it, other than what certain gentlemen in whom I had great confidence had told me, that in their opinion the evidence against him was conclusive. I told him I did not know what could be done, but if any thii g could be obtained for him, if he saw fit and felt that he could rely on my honor to make any disclosures to me, he might be sure they should never be divulged, I would die first, until 1 could obtain the security of the government. At that time [ thought a confession to a clergyman was sacred. I charged him, if he was innocent, by no means to state any thing to involve himself; he must be the judge of that. He asked me repeatedly if I thought they could prove it. I told him I did not know any thing more than I had said before. I went to the jail again at three o’clock the same day. A similar conversation took place. He asked me what I thought of the evidence against him. I told him I did not know, but I thought it would be difficult for him to account for the two letters which I had heard had been traced to him. He asked me (at the suggestion, as I understood, of the prisoner in the cell above him,) if I thought they would bring Palmer up from the State of Maine. I told him my belief that they would. I told him I would do all in my power towards obtaining for him the privilege of being State’s evidence. I told him I could offer him no bribe ; I would not persuade him ; he must act on his own responsibility. I went to the jail a third time the same day, before which I had learned that a letter had been written requesting that Palmer might be admitted to become State’s evidence. I told the prisoner I had seen the letter, and that if any thing was to be done for him, it must be done that day. I stated to him, that I had inquired of counsel whether, if the confession were not sufficient to convict another, it would save him, and I told him the answer, that it would, if made in good faith. He then, without further preface, made disclosures. After I left the jail, I did not see the prisoner again until 1 had called upon the attorney-general. Having obtained a letter from the attorney-general, I visited the prisoner on the 29th of May. The letter was shown to him, promising the protection of government, and he was informed that the prom *495 jse was upon the sole condition that he should make an explicit, exact and full disclosure of every„circumstance connected with the event referred to ; and that in case of any refusal to answer touching any topic known to him, or of any evasion, equivocation or designed contradiction or withholding of testimony, he was not to receive the benefit of the promise. The prisoner then made a confession without compulsion, bribe, solicitation ór any inducement whatsoever, other than the pledge of the government as contained in the letter of the attorney-general. The confession is in my handwriting, and is subscribed by the prisoner at the end of it and at the bottom of every page. I did not tell the prisoner, before he made this confession, that his first confession would not be used against him.
The attorney-general offered in evidence the written confession only, and not the oral disclosures made by the prisoner before he had received the promise of the government.
Gardiner objected that the confession could not be admitted in evidence, because it was not made voluntarily, but upon a promise of favor. It is contended, that if a confession is made by an accomplice, upon a pledge of the favor of the government, and he afterwards refuses to testify, the confession becomes admissible against himself. If the true reason for rejecting a confession made upon a promise of favor is, that it is not credible, a breach of contract in the party confessing cannot render it credible. The contract with the prisoner was, that if he w'ould testify against his accomplices, he should not be prosecuted himself. He has refused to testify, and we admit that he has thereby forfeited his title to favor, and is right fully put upon his trial; and this must be the whole penalty for his breach of contract. In Christian’s note to 4 Bl. Comm. 331, it is said, that upon a trial before Butter J., the accomplice, who was admitted a witness, denied in his evidence all that be had before confessed, and that “ upon his previous confession and other circumstances,” he was convicted. It does not appear that'such confession was not voluntary. Starkie (on Evid. vol. 2, p. 23,) says, that “ by a breach of the condition the accomplice forfeits his claim to favor, and is liable to be tried and convicted upon his confession.” The authority *496 cited by him is the case of Rex v. Burley, where the prisoner made a confession after a representation made to him by a constable that his accomplices had been taken into custody, which was not the fact. Such a confession would have been admissible in evidence, under the general rule, for it was made without any threat or promise of favor.
Webster. The question before the Court has never before arisen in the United States, and is to be determined upon English authorities and general reasoning. According to the English authorities, this confession is admissible in evidence.
Between a confession by a prisoner, inculpating himself only, and a confession implicating others also, there is a wide difference in principle. Where he charges himself alone, the confession is to be strictly watched, because it is not to be supposed that he will implicate himself unless he is influenced by the hope of favor or fear of punishment, and under such influence he may state whatever he thinks may benefit him without regard to the truth. But in the case of an accomplice disclosing his own guilt and charging others under an offer of indemnity, the law presumes that he tells the truth with deliberation ; and he has a motive to tell the truth ; his safety depends upon it. It is said his confession is not credible. But he.is to be believed when he testifies the same things on the trial of his accomplices, and his oath is not stronger against them, than his own interest is in regard to himself. But there is a deeper principle than that. In our practice, the moment an accomplice is permitted by the attorney-general to make a disclosure, he is safe ; he is beyond hope or fear ; his security is as complete as if he had received a pardon. The only thing which can bring him into jeopardy is a departure from the truth.
These disclosures are not like a simple confession, because they are not gratuitous. If they cannot be used against the prisoner, the government is trifled with, and the course of justice is impeded. Several persons were engaged in the same crime. The government selects one and offers him an indemnity if he will confess and testify against the others. He is admitted a witness, and the others are put upon trial. He refuses to testify, and they are acquitted. He is then tried *497 himself and acquitted, because his disclosures cannot be used against himself. Such must be the course of proceedings according to the principles urged in behalf of the prisoner at the bar. In effect, the law officer would be deprived of the privilege of offering an indemnity to an accomplice, in consideration of his becoming a witness for the government.
The case of Rex v. Rudd, Cowp. 331, is decisive of the question before the Court. Lord Mansfield says the present practice of offering mercy to an accomplice, has been adopted in analogy to the law of approvement. By that law it must appear, that the approver has discovered the whole truth, and if he has not, he is hanged, and upon his own confession, that is, the same confession which entitled him to become an approver. So the modern cases cited by Christian and Starkie must have reference to the particular confession which entitled the prisoner to become a witness ; they would not have said, that on his refusal to testify he might be convicted “ on his own confession,” if they meant merely that he was liable to be tried and convicted.
The general principle is, that confessions are evidence. This Court have adopted the exception, so far as the English authorities go. Here is a qualification to the exception, which brings it nearer to the general principle. The Court will not favor the exception against the general rule, especially where the exception itself is of doubtful character.
But if there were no accomplice, and this were a confession affecting the prisoner alone, there is nothing in the circumstances testified to by the witness, that would exclude it.
Dexter, in reply. In the case of J. Francis Knapp it was considered, that credibility is the principle upon which a confession is admissible in evidence, and that to be credible it must be made by the party, uninfluenced by a menace or promise of favor. It is argued, that the confession in question is to be believed, because the prisoner was safe when he made it. Whether he was or was not safe, could make no difference in principle in any case. But if it could, yet here it is not material, for the first confession was made under such circumstances as to render it inadmissible, and the subsequent one must be excluded, unless the government show that the im *498 pressions under which the first was given had been entirely removed. Nothing has occurred to give the last a different character from the first. It is the common case of an involuntary confession repeated under the influence which produces it originally. 6 Petersdorff’s Abr. 82.
JVov. lift.
In jRttdd’s case, which has been relied on, the question was, whether the prisoner, not having made a full disclosure, should be put upon trial, or be discharged. The old law of approve- ■ ment bears little, if any, analogy to the modern practice in regard to accomplices.
The case of Rex v. Hall, 2 Leach, 636, note, is directly in point.
The stipulation on the. part of the government is, if you testify fairly, you shall not be put upon your trial ; if you do not, you shall be. This is the whole of the contract. The government do not say, if you refuse to testify, we will use your involuntary confession against you. If an involuntary confession is excluded, because it wants credibility, does it become credible in consequence of the prisoner’s being unwilling to swear to it ? The very reason for bis refusal may be because it is not true.
Webster. HalVs case does not touch the present case, because there was no promise or attempt to use Hall as King’s evidence ; and it is besides of doubtful authority.
Putnam J.
delivered the opinion of the Court. The law is clearly settled, that the confessions of a party freely and voluntarily made, are to be received against him as competent evidence. The difficulty in administering this part of the law, is not so much in regard to the rule, as in the application of the facts to the rule ; in other words, in ascertaining from the facts and circumstances, whether the confessions were free and voluntary, or whether they were procured by the influence of another, under a hope of favor or advantage if they were made, or fear of harm or disadvantage if they were withheld.
The government propose to give in evidence against the prisoner, his confession which was made in writing after he had received the assurance of the attorney-general that he should not be prosecuted, if he should testify truly upon the trial of his accomplices. And it is stated by the witness, that the *499 confession was deliberately made, and reduced to writing in the presence of the prisoner, and subscribed on each leaf by the prisoner with his own hand. That confession is competent evidence unless the prisoner can show that it was obtained under an improper influence of fear or hope excited in the mind of the prisoner at the time when he made it.[1] And it is contended in his behalf, that such influence was brought to bear upon him, by the witness, in the various communications which he had with the prisoner before he obtained the protection of the government.
We must attend to those circumstances, in order to determine the validity of the prisoner’s objection.
And here we must distinguish' between the verbal communications which were made by the prisoner to the witness, before he made the application to the attorney-general, and the written declarations and confessions which were made after the protection was obtained. The government do not offer those verbal confessions, but would confine the evidence of confession to the facts which were reduced to writing.
But it has been urged by the counsel for the prisoner, that although the written confession was voluntary, and not induced by persuasion or any external influence, yet if the first confession was not voluntary, the subsequent confession is also inadmissible.
The principle undoubtedly is, that if a confession is procured by threats, or promises of favor, all subsequent confessions of the same fact are to be excluded; and the reason given is, that the subsequent confessions may be presumed to be induced from the same motive of fear or hope ; and therefore, if it is shown that such motive has been removed before the subsequent confessions are made, this will rebut the presumption and render the subsequent confessions admissible.
When Mr. Colman went into the cell of the prisoner, he said to him, that “ he was sorry to see him in that situation , and if he could render him any services in his power, proper to be rendered, the prisoner might command them.” The prisr *500 oner then inquired of the witness “ if he thought they could prove it.” He answered, that “he did not know any thing about it, other than what certain gentlemen in whom he had great confidence, had told him, which was, that in their opinion the evidence would be conclusive.” The remark mostly relied upon by the counsel for the prisoner, as influencing the verbal confession, was the following. The witness said that “ he did not know what was to be done, but if any thing could be obtained for him, and he thought fit to rely on the witness’s honor, to make disclosures to him, they should never be divulged, the witness would die first, until he had obtained the security of the government.”
Now if the inquiry were confined to the verbal declarations which followed this proposal of the witness, the Court are all clearly of opinion that they were made under the. hope of obtaining the privilege of being made a witness for the State, under the influence which the witness excited in the mind of the prisoner. If the matter had stopped there, the discloures made upon that solicitation, and under that hope of favor so excited, would seem clearly to be incompetent. But the matter did not stop there; for in consequence of the verbal communications which the prisoner made to the witness, the witness did apply to the attorney-general, and did procure from him the desired protection of the government.
The prisoner had then obtained all that he hoped for, viz. the consent of the government to be a State’s witness. He might take the benefit upon the terms offered or he might refuse to do so. And he was left to the free exercise of his own judgment.
Now in the present case it is clear, that the motive supposed to have induced the first confession, was completely removed, and must have ceased to operate before the written confession was made. The prisoner had in his possession the letter of the attorney-general, promising the protection of the government, on condition of his making a full disclosure, and testifying in the case fully and truly. The benefit was offered “upon the sole condition that he should make an explicit, exact and full disclosure of every circumstance connected with the event referred to ; ” and he was informed, “ that in case of any refu *501 sal to answer touching any topic known to him, or of any evasion, equivocation or designed contradiction or withholding of testimony, he was not to receive the benefit.” To that he assented.
The witness further stated, that he did not refer to the verbal disclosures which had been made, but to the statements and testimony which the- prisoner was thereafter to give upon the trials of his accomplices. He was to make a full confession of all the facts in the case, and to answer any questions which should be put to him by proper authority. This was fully explained to the prisoner, before he made the confessions which are now proposed to be given in evidence. A night had intervened after the witness left the prisoner to make the application to the attorney-general, affording the prisoner time for reflection ; and he deliberately proceeded to make his confession in writing, under these explanations and circumstances. The witness did not persuade him upon the subject. If the verbal disclosures were made under the influence of hope excited by the witness, the written confessions were made after that hope had been realized. He was safe if he would be true and faithful in the performance of his engagement. He had solicited and obtained the protection of the government, and was at liberty to accept it upon those terms, or to stand upon his defence.
We cannot perceive how the prisoner, thus situated, could have any motive falsely to accuse himself, although he might have a motive to continue his false accusation against his accomplices. And besides, if any such motive could be supposed to operate, it was a new motive, and not arising from external influence. And it is no objection to the admission of a confession, that it was made from interested motives and with the hope of favor, if the motive is not excited by external influence.
If the accomplices had been upon trial, it is clear that the testimony of the prisoner would have been competent against them. It would be liable to great observation, and its credits lity would be the fair and just subject of argument. But still it would be competent. And yet the motives which could *502 operate upon his mind would be strong, to magnify the ev dence against his accomplices, but he would have no motive to criminate or accuse himself beyond the truth.
The confessions which are now offered in evidence, were made deliberately, in part-execution of the prisoner’s agreement. But upon being called to testify upon the trial of John Francis Knapp, he refused to do so.
By his refusal to testify it is admitted that he has forfeited all claim to the extraordinary favor of the government. But in what did that favor consist ? It was in not using his confession against himself, if he would conduct himself faithfully as a state’s witness. By his refusal the government are absolved ; and it is now contended that the prisoner is absolved also, and that his confession cannot be used against him, notwithstanding his refusal.
Persons who are properly admitted here as state’s witnesses, are substantially in the same situation as persons in England who are properly admitted to become witnesses for the crown, against their accomplices. The protection of the government is extended upon the same terms, although the forms of proceeding are somewhat different. There, if the witness for the crown conducts himself fairly and makes and testifies to a full disclosure, he is recommended to mercy, and a pardon is always granted. Here the attorney-general, of his own authority and upon his official responsibility, gives the pledge of the government that the state’s witness shall not be prosecuted, if he makes, and testifies to a full disclosure of all matters in his knowledge against his accomplices. In England, as well as in Massachusetts, those who are admitted as witnesses for' the government, may rest assured of their lives if they perform their engagements. So that it becomes a material inquiry how those persons in England, who have been admitted as witnesses for the crown, are dealt with, if they fail to redeem the pledge which they made to the government upon receiving the benefit of becoming king’s witnesses.
And we believe the law to be clearly settled there, that-if they refuse to testify, or testify falsely, they are to be tried themselves, and may be convicted upon their own confession, *503 which was made after they were so permitted to become witnesses for the crown.
This rule of the law is recognized in the books. In 2 Stark. Ev. 23, and 50, it is stated, that where a prisoner had been admitted king’s evidence, and confessed, and upon the trial of his accomplices refused to give evidence, he was convicted upon his own confession, although it had been previously falsely represented to him by a constable that his accomplices were in custody. And that conviction was approved by all the judges in England. Rex v. Burley, coram Baron Gar row, at Lent assizes, 1818. So in 4 Bl. Comm. 333, in a note by Mr. Christian, published more than twenty years ago, it is said, that upon a trial some years ago at York, before Mr. Justice Butter, the accomplice who was admitted a witness, denied in his evidence all that he had before confessed ; upon which the prisoner was acquitted. But the judge ordered an indictment to be preferred against the accomplice for the same crime ; and upon his previous confession and other circumstances he was convicted and executed.” And it is added, “ if the jury were satisfied with his guilt, there can be no question in regard to the law or the justice of the case.” This note is continued in the late edition of Blackstone’s Commentaries by Chitty and Archbold.
The permission to become a witness for the crown was in-ti oduced as a substitute for the old law relating to approvement; and is a great melioration of the law in favor of those who are admitted to be king’s witnesses. See Rex v. Rudd, Cowp. 335, and the cases there cited by Lord Mansfield. According to the law of approvement, if the jury do not give credit to the approver, and his accomplices are acquitted, the approver himself is executed ; but where the king’s witness makes a fair and full discovery to the satisfaction of the judge, he is to be recommended to mercy, notwithstanding the jury would not convict the accomplices upon his evidence.
The law touching approvement has not been adopted in Massachusetts, but instead of that the law and the usage have been, to admit persons as witnesses for the State ; and they am to be treated here in regard to their confessions, as witnesses for the crown are in the mother country. The prisoner who *504 does not conduct himself truly, is not at liberty to take back the confession which he deliberately made. It is clear that the king’s witnesses could not do so in England, and we do not perceive any legal reason why the state’s witnesses should be permitted to do so here. A confession made under such circumstances as are found in this case, must be considered as freely and voluntarily made.
The case of Hall has been cited by the counsel for the prisoner, to show that confessions made under the hope of being admitted king’s evidence, are not to be received.
That case is cited in a note to Larnbe’s case, (case 236) 2 Leach, 636. It is stated in the note, that one Tart was offered to prove that the prisoner Hall desired him to apply to the justice to be admitted as a witness for the crown, for that he had not entered the house but had only stood at the door while the other two prisoners went up stairs to commit the felony. And that Mr. Sergeant Adair, who sat on the crown side for Mr. Justice Wilson, on objection being made, rejected the evidence as not a voluntary confession, but made under the hope of being admitted to become a witness for the crown.
This case is mentioned in 2 Stark. Ev. 49, but not with approbation. It is against the current of the authorities ; going to the extent of rejecting confessions made without any external influence, merely because the party hoped to obtain some benefit thereby. Such a rule would exclude all confessions ; for although they may arise from the party’s own reflection, they are always made under a hope of some benefit. But in that case the external influence is entirely wanting. It appears also, in the principal case above' cited, (Lambe’s case,) that Hall was convicted upon his examination before the magistrate, which was not taken in writing, but proved by two witnesses viva voce, which amounted to a full confession of his guilt. But we do not perceive any good reason for the rejection of Tart’s evidence, as to the confession which Hall .made to him of his own accord, as is above stated.
Upon the whole, after great consideration, we are all of opinion that the confession of the prisoner reduced to writing and signed by him, and made under the circumstances which *505 are proved in this case, is competent evidence for the consideration of the jury.* [1]

Nov. 12th.

It was argued to the jury by the counsel for the prisoner, that they were judges of the law, as well as of the evidence, in capital cases, and that they ought to reject the confession of the prisoner as incompetent testimony, notwithstanding the Court had admitted it. Upon that point the Court instructed the jury as follows.
Putnam J.
The proposition that the jury are judges of the law as well as of the fact, is not true in its broadest sense. It requires some qualification.
As the jury have the right, and if required by the prisoner, are bound to return a general verdict of guilty or not guilty, they must necessarily, in the discharge of this duty, decide such questions of law as well as of fact, as are involved in this general question ; and there is no mode in which their opinions upon questions of law can be reviewed by this Court or by any other tribunal. But this does not diminish the obligation resting upon the Court to explain the law, or their responsibility for the correctness of the principles of law by them laid down.
The instructions of the Court in matters of law, may safely guide the consciences of the jury, unless they know them to be wrong. And when the jury undertake to decide the law (as they undoubtedly have the power to do) in opposition to the advice of the Court, they assume a high responsibility, and should be very careful to see clearly that they are right.
Although the jury have the power, and it is their duty to decide all points of law which are involved in the general question of the guilt or innocence of the prisoner, yet when questions of law arise in the arraignment of the prisoner, or in the pi ogress of the trial, in relation to the admissibility of evidence, they must be decided by the Court, and may not afterwards be reviewed by the jury.[1]
Mr. Justice Butter, when delivering the opinion of the twelve *506 Judges of England in the case of the King v. Atwood & Robbins, states the law upon this point. “ If a question be made respecting the competency [of a witness,] the decision of that question is the exclusive province of the judge, but if the ground of the objection go to his credit only, his testimony must be received and left with the jury, under such directions and observations from the court as the circumstances of the case may require, to say whether they think it sufficiently credible to guide their decision in the case.” 2 Leach, 522, case 201.
If the court reject the testimony,"the jury have no means of receiving it against the opinion of the court. So if the evidence is admitted by the court, the jury must take it. They cannot reject it as incompetent. They are confined to its credibility and effect.
In weighing the evidence, the jury will examine and consider the manner in which it was obtained, and was given, as well as all the circumstances applicable to it; and if, in view of all the facts and circumstances proved, it is, in their opinion, unworthy of credit, they will disregard it in their decision of the case, as being incredible, although they cannot reject it as incompetent.
The judge then called the attention of the jury to the circumstances which had been proved, relating to the confession of the prisoner, which the Court had admitted as competent testimony, and left the weight and credit of it for their decision.

 In the ease of* Alfred Twombly, who was indicted for a rape and was tried in Middlesex, on December 7th, 1830, before Shaw C. J., Wilde J. and Morton J., the fifth juror sworn stated, after the twelfth had been sworn, but before the jury were empannelled, that he had conscientious scruples of convicting for any crime punishable with death except the crime of murder. Numerous peremptory challenges had been made, both before and after this juror was sworn. Laiorencc and tfcydock, of counsel for the prisoner, objected that it was too late to set the juror aside, but the Court overruled the objection, and the juror being put on the voir dire and confirming his statement, was rejected. The prisoner’s counsel suggested that this impaired the prisoner’s right of challenging; and the Court permitted him, under the circumstances, to waive any of the challenges previously made by him.

 See St. 1785, c. 23, § 2.

 See State v. Crank, 2 Bailey, 66; Roscoe’s Crim. Ev. 172, 173.

 See Roscoe’s Crim. Ev. 28 et seq. and notes ; 2 Phil. Ev. (Cowen & Hill ed.) 235 to 243, notes.

 See State v. Phelps, Kirby, 282; People v. Whipple, 9 Cowen, 707; State v. Thompson, Kirby, 345.

 United States v. Battiste, 2 Sumner, 240. But see contra, United States v. Wilson & Porter, and United States v. Porter, 1 Baldwin, 99.