## COURT OF APPEALS.

### July 12, 1918.

## THE PEOPLE v. FRANK REILLY.

(224 N. Y. 90 )

PRACTICE—DISTRICT ATTORNEY—AGREEMENT WITH ACCUSED THAT THE ANSWERS HE MIGHT MAKE TO QUESTION SEEKING EVIDENCE AGAINST ANOTHER WOULD NOT BE USED AGAINST DEFENDANT UPON HIS TRIAL.

A district attoreny by his representative, on the examination of a person accused of crime for the purpose of obtaining information as to the guilt of another person who had been convicted of a crime for use on an application by the latter for executive clemency, stipulated that whatever was said by the person so examined at that time should not be used against him and the subsequent statement of such accused person was made upon the faith of this stipulation. When the latter was placed on trial the assistant district attorney having charge of the prosecution decided to violate this stipulation and to offer in evidence part of the statement made by the defendant, and over sufficient objection and exception this violation was permitted by the trial judge, who allowed the same to be reecived against the defendant for the manifest purpose of contradicting the evidence which he was then giving in his defense. *Held*, that it was error for the trial court to permit the district attorney to violate his stipulation. Section 395 of the Code of Criminal Procedure has no application to such case, nor upon the facts shown is the district attorney relieved from keeping his stipulation upon the ground that the defendant did not keep an implied agreement that he would tell the truth.

SAME.

The error thus committed was so substantial and the result presumably so detrimental to the rights of the appellant that his conviction should be reversed and a new trial granted.

(People v. Reilly; 181 App. Div. 522, affirmed.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the First Judicial Department, entered February 15, 1918, which reversed a judgment of the Court of General Sessions of the Peace in the county of New York

rendered upon a verdict convicting the defendant of the crime of assault in the second degree and granted a new trial.

The facts, so far as material, are stated in the opinion.

*Edward Swann, District Attorney* (*Robert C. Taylor,* of counsel), for appellant.

The falseness of defendant's statement destroyed his claim of privilege.     (Comm. v. Knapp, 9 Pick. 496; 10 Pick. 477; Greenl. on Ev. [16th ed.], § 379; Wigmore on Ev. 950, § 834; Cowen & Hill's Notes to Phil. on Ev. [ed. 1839] 238, note 206; 12 Cyc. Law & Pr. 473; State v. Moran, 15 Oreg. 262; Glickstein v. U. S., 222 U. S. 139; Counselman v. Hitchcock, 142 U. S. 547; Brown v. Walker, 161 U. S. 591; People v. Tice, 131 N. Y. 651; People v. Pindar, 210 N. Y. 191; People v. Trybus, 219 N. Y. 18; Simon v. Etgen, 213 N. Y. 589; Wigand v. Bachman-B. Bwg. Co., 222 N. Y. 272; Hamilton College v. Roberts, 223 N. Y. 56.)

*Lewis Stuyvesant Chanler* and *Edward J. White* for respondent.

The conduct of the prosecuting officer was improper and prejudicial to the rights of the defendant.     (People v. Gibbs, 93 N. Y. 470; People v. Kennedy, 159 N. Y. 346.)

HISCOCK, Ch. J.:

The defendant was convicted of the crime of assaut in the second degree because he shot a man named Tynan with a revolver, at a large pleasure resort and drinking place in the upper part of New York city.     This judgment has been reversed because of error in the admission of evidence.

On the trial defendant by his evidence and arguments claimed that he never intentionally shot Tynan.     His defense in substance was that he had become involved in a controversy

with a group of men, some or all of whom were criminals, and whereby he had been led to believe that his life was in danger; that on the occasion in question he had no revolver but found himself threatened with one in Tynan's hands; that he wrested this away from him threw. it on the floor and fled, and if his agency contributed at all to the shooting of Tynan it was entirely unintentional and while he was engaged in protecting his own life from threatened attack.

On the same occasion and at the same place a man named Bambrick shot and killed a policeman who was endeavoring to arrest him. For this Bambrick was convicted of murder in the first degree and after this judgment of conviction had been affirmed by this court he made an appeal to the governor for executive clemency. The circumstances which led up to and surrounded the assault upon Tynan were more or less introductory to and connected with the murder committed by Bambrick. In fact, one of the grounds urged for the conviction of the latter was that at the time when he killed the police officer he was engaged in the commission of a felony in assisting the present defendant to escape. Presumably acting under the authority of section 695 of the Code of Criminal Procedure, which provides in substance that upon application to the governor for pardon, commutation or reprieve it shall be the duty of the district attorney of the county where the conviction was secured to supply the governor upon his request with information bearing upon the propriety of granting or refusing such pardon, commutation or reprieve, the district attorney of New York county undertook to examine the defendant at the prison where he was then confined under the charge upon which he has now been convicted. At first the defendant declined to talk, but after a statement had been made by the prison chaplain, in the presence of the assistant district attorney and under such circumstances as to put the latter in the attitude of assenting and stipulating thereto, that what the defendant might say

32

would not be used against him, the latter proceeded to make a statement to the assistant district attorney as desired.    We repeat and emphasize that upon this appeal it is conceded and must be held that the district attorney by his representative stipulated that whatever was said by the defendant at that time should not be used against him and that the latter's subsequent statement was made upon the faith of this stipulation.

When the defendant was placed on trial the assistant district attorney having charge of the prosecution decided to violate this stipulation and to offer in evidence part of the statement made by the defendant, and over sufficient objection and exception this violation was permitted by the trial judge, who allowed the same to be received against the defendant for the manifest purpose of contradicting the evidence which he was then giving in his defense.    While the entire statement was not offered, it is apparent from some things which appear in the record that it was a long one, and I think we are justified in assuming that in a general way it followed the same theory adopted upon his trial, that defendant did not intentionally shoot Tynan but was engaged in an attempt to protect his own life in getting away from the latter a revolver in his possession.    That part which was received by the court upon the offer of the assistant district attorney in violation of the stipulation and agreement with the defendant, referring to the struggle for possession of the revolver, contained the following: " Q.  Did it (the revolver) go off at all ?  A.  There were shots fired and I could not tell where they went.    The first shot went through me just like that.    Q.  You mean while you were struggling with this man for the possession of the revolver it went off ?  A.  Yes.  *I got it with that hand and it went off.*  Q.  Did it hit anybody ?  A.  I don't know. Q.  Did you see anybody fall ?  A.  No, sir, I was too excited."

The importance of this testimony is based upon the fact that it contradicted defendant's claim upon the trial that the revolver was not discharged, even though accidentally, while he was

in any manner in possession or in control of it, and the question presented is the one whether it was error for the trial court to permit the assistant district attorney to violate this stipulation. We agree with the Appellate Division that it was, although we reach that conclusion perhaps by a somewhat different course of reasoning than was adopted by that court.

We apprehend that in the absence of some express prohibition there can be no doubt that a district attorney charged with the prosecution of an alleged criminal may make and be required to keep such a stipulation in respect of the procedure to be pursued upon his coming trial as was made in this case. Instances are constantly occurring where the district attorney in the interest of justice and for the purpose of detecting crime has made and carried out some promise of immunity or favor to a person suspected of or charged with crime. In this case the same district attorney who was charged with the prosecution of defendant had also the duty of learning all the facts which might bear upon the propriety of granting Bambrick's application for clemency. A human life was involved and we are aware that it was most earnestly argued that Bambrick was innocent and that the jury had made a mistake in convicting him. There was no manner in which the defendant could be compelled to talk. Nothing was lost and no principle of public policy was violated by the promise of the district attorney that if he would talk, what he said should not be used against him. And of course power to make the stipulation involved the duty to observe it. In fact we think it would be extremely detrimental to the administration of justice if it should be established that a district attorney need not keep with an accused person such an agreement as was made in this case, and that such a rule ought not to be established unless compelled. We do not think that there is any statute which forbade the stipulation or which overrides it. The only one which at first thought might seem to do this is section 395 of the Code of Criminal Proce-

dure, which enacts that " A confession of a defendant, whether in the course of judicial proceedings or to a private person, can be given in evidence against him, * * * unless made upon a stipulation of the district attorney, *that he shall not be prosecuted therefor;* * * *." If applicable it might be argued that this section allowed the use of defendant's statement against him in spite of the district attorney's stipulation because the latter did not promise immunity from prosecution, but only to refrain from using the statement. We do not, however, think that this section has any application to the present situation. The district attorney so argues and we agree with him. The defendant's statement was in the nature of evidence or information given in a proceeding to investigate a question which was not legally connected with the crime of which he was accused. It was not made in an investigation judicial or otherwise to determine the authorship of the crime with which he was charged, and even though it had contained some incriminatory admission we do not think that this would have made it a confession whose use was regulated by section 395.

Furthermore, we do not think that the defendant's statement is to be regarded as a confession at all. As has been said, while the entire statement is not in evidence we are warranted in believing that it was not a confession of crime, but rather an exculpatory narrative intended to demonstarate the exact reverse—that defendant had not committed any crime, and under these circumstances even though it contained some isolated sentence which contradicted the defendant's theory we do not believe that it is to be regarded as a confession. (Wigmore on Evidence, sec. 821; State v. Gilman, 51 Me. 225; State v. Cadotte, 17 Mont. 315; State v. Novak, 109 Ia. 717; Meadows v. State, 136 Ala. 67; People v. Ammerman, 118 Cal. 23.)

It is, however, now urged by the district attorney, although no such excuse for the violation of his stipulation by his assistant was given either at the Trial Term or at the Appellate Division,

that he was relieved from keeping his agreement because of what amounted to a failure of consideration. It is said that the statement made by the defendant to the district attorney and which has been quoted was false, that the district attorney made his stipulation upon the implied agreement that the defendant would tell the truth and, therefore, the latter not having kept his agreement, the former was relieved from keeping his and authorities are cited to support this proposittion. (Wigmore on Evidence, secs. 834 *et seq.;* Comm. v. Knapp, 26 Mass. 496; Comm. v. Knapp, 27 Mass. 477; State v. Moran, 15 Oreg. 262, 269-271.)

There are at least two answers to this proposition. In the first place the authorities cited are not applicable to the facts in this case, for they deal with cases where there was a deliberate and unquestioned refusal and failure of the accused person to keep his agreement and give material evidence against another upon the strength of which the prosecuting officer had promised favor or immunity. There is nothing in this case which indicates to our mind that the particular sentences offered in evidence demonstrate an intention to falsify on the part of the defendant. From the fact that out of the long statement which the defendant made only one short passage had been selected for use upon his trial, it is quite safe to assume that the statement in the main corresponds with the evidence given on the trial, and it is largely upon the circumstance of variation between that statement and his present evidence that the district attorney bases a claim of falsification in giving the former. Moreover, we cannot see that the statement made by defendant of the precise manner and instant in which and when the revolver was discharged was material in the investigation which was then bieng conducted of Bambrick's crime. If the defendant's statement was true that the revolver was accidentally discharged while he was seeking to get away from Tynan, the circumstance that he did or did not have his hand upon it was certainly not

at all important in the investigation of Bambrick's actions and subsequent crime in killing the police officer.

Still further we do not think that the district attorney is now permitted to give as a reason for violating his stipulation the one which he urges. The statement that the revolver was discharged while defendant had his hand upon it was somewhat more favorable to the claim of the people than was the evidence that defendant was not touching it when it went off, and of course the district attorney offered this prior statement not upon the theory that it was false but that it was true and tended more closely to connect the defendant with the shot than did his evidence upon the trial and, therefore, to contradict and impair the force of the latter. It is perfectly safe for us to assume that upon the trial the district attorney did not argue that the prior statement was false but that he stood upon it as a more truthful statement than the one to be implied from the defendant's evidence that he did not have hold of the revolver at all when it went off. Having used the statement on that theory and for the manifest purpose of contradicting the defendant, he ought not to be allowed now to take the opposite position that the statement was false and that, therefore, he was relieved from the agreement.

The majority of the court are of the view that the error thus committed was so substantial and the result presumably so detrimental to the rights of the appellant that his conviction should be reversed and a new trial granted.

Therefore, the judgment of the Appellate Division should be affirmed.

CHASE, HOGAN, CARDOZO, POUND, McLAUGHLIN and ANDREWS, JJ., concur.

Judgment affirmed.