THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* FLOYD RHEM, Defendant.

Supreme Court, Criminal Term, Kings County, October 14, 1966.

*Anthony Marra, Patrick M. Wall* and *Caroline Davidson* for defendant. *Aaron E. Koota, District Attorney* (*James H. Shaw, Jr.,* of counsel), for plaintiff.

M. Henry Martuscello, J. This is a *coram nobis* proceeding. The defendant was tried before a jury on an indictment charging him with the crime of robbery in the first degree. The complaining witness testified that the defendant grabbed him by his coat and demanded his money; that he turned over to the defendant an empty wallet and $1.35 in new coins and thereupon the latter produced a knife and stabbed him in the abdomen. There was no other witness to this crime. The defendant was arrested near the scene of the crime shortly after it was committed. He was then 16 years of age. Questioned in the presence of the complainant, he denied that he had robbed or assaulted him. Thereafter he was searched and on his person was found $1.35 in new coins.

Taking the stand at his trial, he denied committing the acts attributed to him. Asked whether he had ever been convicted of a crime, he answered "no". On cross-examination, however, the prosecutor inquired as to specific acts of misconduct on his part and elicited, without any objection thereto being raised, testimony as follows:

"Q. Mr. Rhem, in 1959 were you living in Manhattan? A. Yes.

Q. In January of 1959 what school were you attending? A. Junior High School 120.

Q. What is the address of that school? A. 120 East 120th Street.

Q. Do you recall the month of March 1959? A. Yes.

Q. On March 3, 1959 did you assault a teacher in that school by striking her? A. Yes.

Q. On January 28, 1959 just about a month and a half before that, did you, together with two other youths, take ten cents from another boy by mugging him? A. No.

Q. On August 28, 1960 do you recall that day? A. Yes.

Q. Were you in Manhattan? A. Yes.

Q. And isn't it a fact that on August 28, 1960 you assaulted another boy with a knife? A. Yes.

Q. Do you recall November 7, 1958, just about a month before Christmas? A. I think so.

Q. Did you together with other boys have a zipgun? A. No."

In summing up to the jury, the prosecutor alluded to this phase of the cross-examination, stating: "He said he didn't do it and he wasn't going to say anything different here, even if he had, if he did as we contend he did, is he a clean-cut person, a person who is mistakenly identified? Is he believable? And I call this to your attention merely on the question of believability, assaulting a teacher. Now that was in March of 1959.

If on March 16, 1962 he was 16 then he was 14 in 1959. August 28, 1960 another act of violence. Couldn't have been more than 15 and now here March 16, 1962."

The jury found the defendant guilty of the crime charged and he was sentenced to serve a prison term of 10 to 15 years.

An appeal was taken from the judgment of conviction. Thereafter, the defendant instituted the instant proceeding by applying for an order vacating the judgment on the ground that his constitutional rights were violated when he was cross-examined in the manner indicated above. He alleged that it was discovered after the judgment was rendered that the prosecutor used records of the former Children's Court relating to the defendant as the basis of the cross-examination; and that such use was in violation of a stipulation between the defendant and the District Attorney which provided that these records would be used only with reference to a possible recommendation by the District Attorney that the defendant be treated as a youthful offender. This application was denied without a hearing by another Justice presiding in Criminal Term, Part I. He held that the grievance complained of was reviewable upon appeal and therefore *coram nobis* was not available as a remedy. An appeal was also taken from the order entered on his determination.

The Appellate Division affirmed the judgment of conviction but reversed the order denying the *coram nobis* application. It held that the allegations of the application justified a hearing and, if true, would establish that the prosecution used the court records in question in violation of a stipulation entered into with the defendant and moreover the use of such records was otherwise prohibited by section 784 of the Family Court Act. (See 24 A D 2d 517.)

A hearing was held and upon the evidence adduced thereon I am satisfied that the cross-examination under attack was not based upon any records of the former Children's Court. I do find, however, that it was based on information obtained from records of the Police Department as a result of leads furnished by the defendant when interviewed by a case worker of the Youth Counsel Bureau attached to the District Attorney's office. On this basis and for reasons hereinafter appearing it is my opinion that such cross-examination violated the constitutional and statutory rights of the defendant.

The Youth Counsel Bureau, hereafter referred to as the Bureau, is a social service agency of the City of New York. Its prime function is to assist youths charged with crime who are in need of rehabilitating themselves and are likely prospects

for treatment as youthful offenders. In the performance of this function it has authority to seek the assistance of public and private agencies to facilitate the rendering of aid to such persons (Administrative Code of City of New York, § E1–3.0). Any information it obtains or presents as well as its records shall be confidential insofar as such information and records would be regarded as confidential under other provisions of the law. There is, however, no limitation or restriction upon its right to disclose confidential information where it is calculated to benefit such youths (Administrative Code of City of New York, § E1–6.0).

The District Attorney of Kings County is ex officio a member of the Bureau and his office utilizes the latter's services in cases involving defendants held for the Grand Jury who might be eligible for youthful offender treatment. The role played by the Bureau in such cases is as follows: Its case worker assigned to the Adolescents' Court interviews a defendant as to his background and prior conduct, having first assured him that any information given will be confidential and will not be used upon any trial against him as an adult offender except that it might be used by the District Attorney in deciding whether he should be recommended for youthful offender treatment. He will also obtain the written consent of the defendant authorizing the District Attorney to inspect records of proceedings brought against him in the Family Court (formerly, Children's Court) of the County of Kings. This consent embodies an agreement by the District Attorney that any information obtained therefrom will be used only with reference to whether or not youthful offender treatment should be accorded to the defendant and that such information will not be used upon any trial against him as an adult offender. Such court records are rarely, if ever, examined. The Bureau, however, will obtain from the Youth Division of the Police Department of the City of New York, a history, if any, of the defendant's delinquency. After all information is gathered, the Bureau submits a typewritten report thereon to the District Attorney's office. To safeguard against any such report being used to cross-examine a defendant, the District Attorney directed the Bureau to stamp thereon a notation, "*Not to be used on cross-examination of defendant or of character witness in his behalf*", and moreover agreed that his office would return to the Bureau its report on any defendant indicted and not recommended for youthful offender treatment.

The records of the Bureau indicate that on March 29, 1962, its case worker, David Pomerantz, interviewed the defendant in the Adolescents' Court after he had been held for the Grand

Jury. The defendant denied that he had been interviewed at that time and place. I find, however, that he was thus interviewed, otherwise Pomerantz would not have been in a position to report to the Bureau, as he did, information which would not have been known to him unless he had interviewed the defendant.

The parties on the hearing proceeded on the premise that Pomerantz had advised the defendant that any information given was confidential and would not be used against him upon his trial. It may be inferred from the exhibits herein that the defendant gave biographical information and disclosed prior arrests for juvenile delinquency; and that he executed a written consent authorizing the District Attorney to inspect records of proceedings brought against him in the former Children's Court, with the proviso, however, prohibiting the use upon his trial of any information obtained therefrom. No records of the Children's Court relating to the defendant were ever inspected by the prosecution. The Bureau, however, did obtain from the Youth Division of the Police Department a history of the defendant's delinquency. It showed that he had been arrested six times for offenses committed in Manhattan. The Bureau submitted to the District Attorney's office a typewritten report on the defendant four days after he had been interviewed. It set forth, among other things, his history of delinquency, showing when and where the arrests were made and the types of offenses involved therein. Stamped on the report was the notation prohibiting its use for cross-examination.

The prosecutor used this report on the trial, it having been retained by his office, notwithstanding that in the defendant's case it should have been returned to the Bureau. On it were pencilled notations of the details of the very acts concerning which the defendant was cross-examined and for which he had been arrested and prosecuted in the Children's Court. These details were transmitted to the prosecutor by his investigator who obtained same from records of the Police Department as a result of leads furnished by the report submitted by the Bureau.

Under the promise made to the defendant by Pomerantz, the prosecution was obligated not to use upon the trial any information obtained from him. The fundamental question presented here is whether this promise was violated when the defendant was cross-examined on the basis of information obtained by the prosecution from records of the Police Department. In my opinion it was. The promise contemplated not only information given by the defendant, but also any other information uncovered, as was the case here, as a result of leads furnished

thereby. A contrary construction would contravene the intentions of the parties and otherwise would sanction a promise which, so far as the defendant is concerned, turned out to be a fraudulent pretext enabling the prosecution to obtain and use upon the trial evidence prejudicial to the interests of the defendant.

The defendant, by revealing biographical data and prior arrests, identified himself with police records. Had he remained silent, as he had a right to, such records in all probability would not have been uncovered by the prosecution. Arrests for juvenile delinquency are not shown on the criminal record of a defendant furnished by the Police Department for the purpose of fixing bail. Nor would they be discovered in the course of investigations customarily conducted by the police unless revealed by a defendant. The information thus furnished by the defendant, alone and of itself, could not be used against him upon his trial, as the prosecution well knew. Though the defendant may not have been aware of this, he did know that the inquiry as to prior conduct did not end with the interview but would be continued so as to uncover the details of the offenses committed by him, as may be inferred from his consent authorizing the District Attorney to inspect records of the Children's Court pertaining to such offenses. He therefore had every reason to believe that the promise applied with respect to any information uncovered as a result of leads furnished by him. That the prosecution intended that the promise would apply to information thus uncovered is apparent from its agreement embodied in the afore-mentioned consent that any information obtained from the records of the Children's Court would not be used upon the trial and otherwise from its direction to the Bureau to stamp on its report a notation prohibiting the use upon the trial of any data set forth therein. In connection with such report it is to be noted that the history of delinquency therein could provide a threshold for an exploratory cross-examination which might lead to the uncovering of the particulars of the offenses committed by the defendant.

If the prosecution intended that the promise would only apply to information given by the defendant, then the said promise was but a fraudulent pretext for obtaining evidence for use upon the trial, since the prosecution, knowing that such information would lead to the uncovering of evidence that could be used against the defendant, nevertheless did not advise the defendant that the promise had no application to such evidence.

Moreover, it seems to me that the interpretation placed on

the promise accords with what appears to be the public policy of this State not to permit the use upon a trial of any evidence against a defendant obtained in the course of an investigation in connection with possible youthful offender treatment (cf. Code Crim. Pro., § 913-i).

Apart from the promise itself, section 784 of the Family Court Act, barring as it does the inspection of police records pertaining to arrests for juvenile delinquency, except under certain conditions not complied with in the defendant's case, likewise it seems to me bars the use upon a trial of any evidence obtained in violation thereof.

The defendant had the constitutional right to a fair trial. The prosecution, having made a promise with respect to the procedure to be pursued upon the defendant's trial, was required to carry out same, and its failure to do so was inconsistent with fundamental fairness and would bring reproach to the administration of justice. That the prosecutor here did not consciously violate the promise is if no consequence, nor is it of any significance that there may have been in the case adequate proof to sustain the conviction. The failure to keep the promise constituted an "error so fundamental, so substantial" that a verdict of guilty will not be permitted to stand (*People* v. *Reilly,* 224 N. Y. 90, 94, 95; *People* v. *Savvides,* 1 N Y 2d 554).

Accordingly the application is granted; judgment of conviction dated November 8, 1962 is vacated and set aside.